# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **POLLY ROARK,** | ) |
| Plaintiff, | ) Case No. 1:16CV00040 |
| v. | ) **OPINION AND ORDER** |
| **UNIVERSAL FIBERS, INC.** | ) By: James P. Jones |
| **ASSOCIATES SAVINGS PLAN,** | ) United States District Judge |
| Defendant. | ) |

*R. Lucas Hobbs and Sheri A. Hiter, Elliott Lawson & Minor, P.C., Bristol, Virginia, for Plaintiff; W. Bradford Stallard, Penn, Stuart & Eskridge, Abingdon, Virginia, for Defendant.*

This case, governed by the Employee Retirement Income Security Act ("ERISA"), presents the question of whether the death benefit due under a former employee's retirement plan is payable to the former employee's widow, whom he married after his employment terminated, or to his parents, whom he had designated as beneficiaries prior to his marriage and during his employment. I conclude that the widow, who is the plaintiff in this action, is entitled to the death benefit; therefore, I will deny the defendant's Motion for Judgment on the Pleadings.

I.

In connection with the present motion, the basic facts of the case are not in dispute. Steven Roark was employed by Prisma Fibers, Inc. ("Prisma"), a predecessor of Universal Fibers, Inc. ("Universal Fibers"), from some time before April 1, 1990, until December 4, 1999. During his employment, Steven participated in the retirement plan administered by Prisma Fibers, Inc. Associates Savings Plan. Throughout his employment, he was unmarried.

On March 16, 1990, Steven completed a Beneficiary Designation Form that named his mother as primary beneficiary and his father as contingent beneficiary of any death benefit payable under the plan. On May 31, 1995, Steven completed a Beneficiary Designation Form designating his mother and father as the primary beneficiaries of his retirement account, and naming his brother Robbie as contingent beneficiary. On March 10, 2000, after his employment with Prisma terminated, Steven married Polly Roark. He did not submit a designation form naming Polly as the primary beneficiary of his account or otherwise changing his named beneficiaries.

The Summary Plan Description says the following regarding payment of death benefits:

**Who is the beneficiary of my death benefit?**

> If you are married at the time of your death, your spouse will be the beneficiary of the entire death benefit unless an election is made to

change the beneficiary. IF YOU WISH TO DESIGNATE A BENEFICIARY OTHER THAN YOUR SPOUSE, YOUR SPOUSE MUST IRREVOCABLY CONSENT TO WAIVE ANY RIGHT TO THE PORTION OF THE DEATH BENEFIT PAYABLE TO YOUR SPOUSE. YOUR SPOUSE'S CONSENT MUST BE IN WRITING, BE WITNESSED BY A NOTARY OR A PLAN REPRESENTATIVE, AND ACKNOWLEDGE THE SPECIFIC NON-SPOUSE BENEFICIARY.

If you are married, you have named someone other than your spouse to be your beneficiary as described in the preceding paragraph, and you wish to again change your beneficiary designation, your spouse must again consent to the change, unless you are changing your designation to name your spouse as your beneficiary. In addition, you may elect a beneficiary other than your spouse without your spouse's consent if your spouse cannot be located.

Compl. Ex. B at 12-13, ECF No. 1-3. The Summary Plan Description further states, "If you are not married, you may designate your beneficiary on a form to be supplied to you by the Administrator." *Id.* at 13. In addition, it reads, "Since your spouse has certain rights in the death benefit, you should immediately report any change in your marital status to the Administrator." *Id.* The Summary Plan Description also states, "If you terminate employment with us and subsequently die, your beneficiary will be entitled to the vested percentage of your remaining account balance at the time of your death." *Id.*

Steven did not notify the Plan of his marriage to Polly, and Polly never submitted a written consent to waive any right she had to Steven Roark's death benefit.

Prisma is now operating as Universal Fibers, and the Prisma Fibers, Inc. Associates Savings Plan is now operating as the Universal Fibers, Inc. Associates Savings Plan (hereinafter "Plan").

Steven died on February 2, 2012. He was married to Polly at the time of his death, a fact which is indicated on his Certificate of Death.[1] Following Steven's death, on April 18, 2013, Steven's parents submitted Death Benefit Distribution Request forms to the Plan. The Plan paid a death benefit in the amount of $54,257.90 to Robert and Joan Roark, Steven's parents. Joan Roark has since died, and the Plan believes that Robert Roark possesses the distributed funds and has invested them in a way that renders them traceable.

On June 14, 2013, Judy Shumate, a human resources representative with Universal Fibers, sent a letter to Polly that stated:

> To confirm my phone call to you today, as Steven's surviving spouse, we need to inform you of the rights given you by a federal law (ERISA). The Employee Retirement Income Security Act (ERISA) governs 401(k) employee savings plans. ERISA rules and guidelines require that a surviving spouse has the primary right to any assets in the account, unless the spouse has signed a waiver consenting in writing to the naming of anyone other than the spouse as primary beneficiary. No such waiver was produced. Accordingly, the 401(k) funds actually belong to you, Steven's spouse.
>
> The company was not aware that Steven had married. He was single when he resigned from Universal Fibers and had not updated

---

[1] It is unclear from the pleadings whether the Plan requested, received, or reviewed a copy of the Certificate of Death before paying the death benefit to Robert and Joan Roark.

his beneficiary form. Now that we have knowledge of a surviving spouse, we are taking action to correct the inappropriate distribution. Therefore, Universal Fibers is contacting his designated beneficiaries, Robert L. and Joan C. Roark, to alert them to this fact and asking that the death benefit distribution received by them be returned to the American Funds 401(k) account. The amount distributed was $54,257.90.

> Once the funds are returned, we will so notify you of your options regarding a rollover or distribution.

Compl. Ex. C, ECF No. 1-4.

Robert and Joan did not return the distributed funds. On an unspecified date, Polly submitted a Death Benefit Distribution Request to the Plan. On October 14, 2016, counsel for the Plan sent a letter to counsel for Polly, apparently in response to a threatened lawsuit, indicating that the June 14, 2013, letter had been sent in error and explaining the Plan's position that the death benefit had been properly distributed to the named beneficiaries.

Polly subsequently commenced this action against the Plan seeking recovery of the death benefit and her attorneys' fees and costs. The Plan filed an Answer and a Third-Party Complaint against Robert Roark seeking to recover from him "all mistakenly paid benefits," Third-Party Compl. ¶ 16, ECF No. 10, as well as the present Motion for Judgment on the Pleadings. Robert Roark has not yet filed

a response to the Third-Party Complaint.² The Motion for Judgment on the Pleadings has been fully briefed by the Plan and Polly and is ripe for decision.³

II.

A Rule 12(c) motion for judgment on the pleadings is considered under the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Occupy Columbia v. Haley*, 738 F.3d 107, 115 (4th Cir. 2013). Such a motion "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks and citation omitted). In evaluating a pleading, the court must accept as true all well-pleaded facts and construe those facts in the light most favorable to the pleader. *Philips v. Pitt Cty. Mem'l Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009). A Rule 12(c) motion should not be granted "unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Quality Props. Asset Mgmt. Co. v. Trump Va. Acquisitions, LLC*, No. 3:11-CV-00053, 2012 WL 3542527, at *2 (W.D. Va. Aug. 16, 2012) (citation omitted). "A

---

² Roark's responsive pleadings to the Third-Party Complaint were apparently due December 22, 2016, but none have been filed nor has Roark otherwise entered a defense. At the request of the Plan, the court extended the time for Roark to answer to January 27, 2017. Order, Dec. 29, 2016, ECF No. 21.

³ I will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court, and argument would not significantly aid the decisional process.

fact is material if it might affect the outcome of the suit under the governing law." *Vannoy v. Fed. Reserve Bank of Richmond*, 827 F.3d 296, 300 (4th Cir. 2016) (citation omitted).

The Plan is an "employee pension benefit plan" as defined by ERISA. 29 U.S.C. § 1002(2)(A). "The award of benefits under an ERISA plan is determined in the first instance by the language of the plan itself." *S.S. Trade Ass'n Int'l Longshoremen's Ass'n, (AFL-CIO) Benefits Trust Fund, (AFL-CIO) v. Bowman*, 247 F.3d 181, 183 (4th Cir. 2001) (internal quotation marks and citation omitted). "Congress identified the need to follow plan documents as a core principle of [ERISA]." *Boyd v. Metro. Life Ins. Co.*, 636 F.3d 138, 140 (4th Cir. 2011) (citing S. Rep. No. 93–127, at 30 (1974), *reprinted in* 1974 U.S.C.C.A.N. 4838, 4866) (internal quotation marks and alteration omitted). The so-called plan documents rule requires that "plan administrators look solely at 'the directives of the plan documents' in determining how to disburse benefits." *Id.* at 140 (quoting *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 299-300 (2009)). The Summary Plan Description is a governing plan document that controls the payment of benefits. *Kennedy*, 555 U.S. at 304; *see* 29 U.S.C. § 1022. The Supreme Court has not decided whether beneficiary designation forms are plan documents, though at least one Court of Appeals has concluded that they are not. *Becker v. Williams*, 777 F.3d 1035, 1038-40 (9th Cir. 2015). If the language of a plan, viewed as a

- 7 -

whole and construed in accordance with common law rules of contract construction, is ambiguous, then the plan's terms should be construed to align with the reasonable expectations of the plan participant. *Johnson v. Am. United Life Ins. Co.*, 716 F.3d 813, 819-20 (4th Cir. 2013). "If the plan language is unambiguous, [courts] will not defer to a contrary interpretation by the plan administrators." *Graef v. Ret. Income Plan for Emps. of Albemarle Corp.*, No. 98-1188, 1998 WL 879687, at *2 (4th Cir. Dec. 17, 1998) (unpublished).

Apart from these general principles of interpretation, ERISA explicitly sets forth certain protections and requirements that plans must meet. A covered plan "shall provide that . . . in the case of a vested participant who dies before the annuity starting date and who has a surviving spouse, a qualified preretirement survivor annuity shall be provided to the surviving spouse of such participant." 29 U.S.C. § 1055(a). An exception applies where the "plan provides that the participant's nonforfeitable accrued benefit . . . is payable in full, on the death of the participant, to the participant's surviving spouse." 29 U.S.C. § 1055(b)(1)(C)(i). ERISA requires that retirement plan benefits be paid to a surviving spouse, absent an effective election by the plan participant. 29 U.S.C. § 1055(c)(1)(A)(i). A participant's election to pay benefits to someone other than his surviving spouse is effective only if:

> (i) the spouse of the participant consents in writing to such election,
> (ii) such election designates a beneficiary (or a form of benefits)

> which may not be changed without spousal consent (or the consent of the spouse expressly permits designations by the participant without any requirement of further consent by the spouse), and (iii) the spouse's consent acknowledges the effect of such election and is witnessed by a plan representative or a notary public.

29 U.S.C. § 1055(c)(2)(A).

The surviving spouse provisions are "part of the statute's mandatory participation and vesting requirements." *Boggs v. Boggs*, 520 U.S. 833, 841 (1997). The spousal protections contained in § 1055(c) "were intended to ensure a stream of income to surviving spouses" and these "formalities must, therefore, be strictly enforced." *Hagwood v. Newton*, 282 F.3d 285, 290 (4th Cir. 2002) (internal quotation marks and citation omitted). The spousal annuity is "[t]he crown jewel of ERISA's spousal protection," and "[w]ithout the spouse's written consent expressly acknowledging the effect of the waiver or new beneficiary designation, a participant can neither waive nor alter the survivor annuity in any way." *VanderKam v. VanderKam*, 776 F.3d 883, 886 (D.C. Cir. 2015).

In *MidAmerican Pension & Employee Benefits Plans Administrative Committee v. Cox*, 720 F.3d 715, 716 (8th Cir. 2013), a plan participant designated his parents as beneficiaries at a time when he was unmarried. He later remarried his ex-wife, and they executed an antenuptial agreement purporting to waive any interest in the other spouse's retirement plans in the event of divorce. In the antenuptial agreement, each spouse agreed to consent in writing to a waiver of

benefits as required by ERISA.  *Id.* at 717.  The couple subsequently separated and began divorce proceedings; however, the husband died before the divorce was finalized.  *Id.*  His wife refused to sign a waiver as required by the antenuptial agreement, and the plan administrator filed an interpleader action to determine whether the wife or the parents were entitled to the retirement plan funds.  *Id.* at 718.  The district court entered summary judgment in favor of the widow, and the court of appeals affirmed.  *Id.* at 720.  The court concluded that the antenuptial agreement did not conform to the statutory consent requirements, which must be strictly applied, and therefore the participant's "designation of his [p]arents as beneficiaries . . . must yield to [the widow's] rights as surviving spouse."  *Id.*

In this case, Robert Roark is not entitled to the death benefit under either the plan documents rule or the plan statutory language.  The Summary Plan Description clearly and unambiguously states, "If you are married at the time of your death, your spouse will be the beneficiary of the entire death benefit unless an election is made to change the beneficiary."  Compl. Ex. B at 12, ECF No. 1-3.  Both the Summary Plan Description and § 1055(c) detail the procedure for making an effective election.  The Plan does not dispute the fact that no compliant election was ever made.  Therefore, based on the pleadings now before the court, it appears that Polly, the surviving spouse, is entitled to the death benefit and accordingly the Plan is not entitled to judgment on the pleadings.

- 10 -

III.

For the foregoing reasons, it is **ORDERED** that the Plan's Motion for Judgment on the Pleadings (ECF No. 7) is DENIED.

ENTER: January 6, 2017

/s/ James P. Jones
United States District Judge